**In the Matter of Delno MERRICK, Jr. and Sara Merrick, Debtors.**

**MID\*AMERICA FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

**v.**

**Delno MERRICK, Jr. and Sara Merrick and Thomas R. Noland, Esq., Trustee, Defendants.**

**Bankruptcy No. 3–83–03038.
Adv. No. 3–83–0231.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 19, 1984.

Jeffrey P. Albert, Dayton, Ohio, for debtors.

Jeffrey V. Laurito, Dayton, Ohio, for plaintiff.

Thomas R. Noland, trustee.

## DECISION

ELLIS W. KERR, Bankruptcy Judge.

Mid\*America Federal Savings and Loan Association filed a Complaint For Relief From Automatic Stay. The Defendants are the Debtors and Trustee, Noland. The property is real estate. Plaintiff alleges

there is no equity in the premises and that Plaintiff lacks adequate protection.

The answer of the Debtor alleged the mortgage was signed by them under duress and coercion and that the mortgage is not supported by consideration. Said Defendants further claim they are entitled to a $10,000.00 exemption pursuant to Ohio Revised Code Section 2329.66(A)(1) and that any liens impairing their exemption should be avoided pursuant to Section 522(f) of the Bankruptcy Code.

Noland, Trustee, filed an answer which generally for want of knowledge or information denies most of the allegations in the complaint, and prays that the Court deny relief to the Plaintiff and enter judgment for the Defendant.

Stipulations were filed and signed by the attorney for the Plaintiff, the attorney for the Debtors-Defendants and by Trustee Noland. The stipulations state that the fair market value of the property is approximately $150,000.00; that the premises are encumbered with the first mortgage lien in favor of Gem Savings Association in the approximate amount of $101,500.00; and, that the Plaintiff is a holder of a promissory note and mortgage deed executed by the Debtors. The stipulations state that the following matters are in dispute: (1) whether the Debtors-Defendants executed the promissory note and mortgage under duress and coercion; (2) whether the promissory note was supported by consideration; and, (3) whether the Debtors have defaulted on the installments of principal and interest due August 1, 1981 and all payments subsequent thereto.

The first matter to be determined is whether the note and mortgage were executed under duress and coercion, were supported by consideration and whether it should be determined that the mortgage is void and unenforceable and should be set aside.

## FINDINGS OF FACTS

The Court considers it unnecessary to make comment in detail as to the testimony of each of the witnesses. These findings are based upon the sum total of the testimony of all of the witnesses.

The loan in question was in the principal amount of $57,600.00. It was secured by a real estate mortgage given to Fidelity Federal Savings and Loan Association. The Plaintiff became the holder and owner of the mortgage as a successor resulting from mergers. The real estate in question was the residence of the Debtors. The mortgage on it was a second mortgage, second to a first mortgage lien in favor of Gem Savings Association in the approximate amount of $101,500.00 as above mentioned in reference to the stipulations.

The Debtor-Defendant Delno Merrick (hereafter Merrick) was in partnership with one William Miller in a business known as Ashlar Development Systems. Ashlar was a development business which purchased property, developed it for apartments and condominiums and at times built on the property. At the time of the making of the loan in question Ashlar was indebted to the Plaintiff in the sum of approximately four million dollars. These were obligations of Merrick and his partner, Miller. When Plaintiff threatened foreclosure a plan was developed whereby Merrick and his wife would give a second mortgage on their home and Miller agreed to a second mortgage on a variety of properties of his as well as others in order to avoid the foreclosure.

Merrick and Miller wanted the money to attempt to complete construction on at least one project known as Randolph Plaza. There had been a default by the contractor doing the construction work on this project. There was some testimony that there was another project called Carrollton Woods. There was also some testimony that Merrick and Miller wanted the money to complete both of these projects. Ashlar was the owner of the property and had contracted with an independent contractor to build on the property. For the purpose of this decision it is unnecessary to make a

determination as to whether the money was to be used on just the one project or the two projects. It is definite that the contractor on the Randolph Plaza project walked off the job.

At the time of the closing of the loan in question a check in the amount of $56,604.87 was made out to the Debtors. The Debtors endorsed the check and gave it back to the closing officer.

At this point there was a conflict in testimony. Memories were hazy.

In questions put by the Court, Merrick testified that he did not know where the money went after the check was turned over to the closing officer, but stated that he could not deny that it possibly could have gone into the Ashlar account.

There was other testimony that the purpose of the loan was not to pay the Plaintiff delinquent interest, but was to provide cash to finish the construction jobs previously mentioned. Attorney Cohen testified that the purpose of the various loans, including the loan at issue in this case, was to raise additional cash for Carrollton Woods construction and also Randolph Plaza construction, particularly the latter because of the fact that there had been a default by the former contractor and Merrick and Miller stated that they were going to attempt to complete the construction themselves. Even Merrick, himself, testified that the plan was "to save Ashlar which was in financial hot water at the time".

The testimony was not clear as to whether the money from this loan went into the Ashlar account to pay the bills. There was no testimony or evidence to indicate that the money went into any other account. It should be noted that there was not in evidence any canceled checks from the Ashlar account or any other account to show the manner in which the bills were to be paid.

Nevertheless, the Court finds that the great preponderance of the evidence indicates that the money from the loan in question was used to pay Ashlar bills.

## CONCLUSIONS OF LAW

■ Based on the above findings of fact the Court concludes that the Debtors did not sign the mortgage under duress or coercion and the Court finds that the mortgage was supported by sufficient consideration.

■ Any consideration recognized by law as sufficient to support the contract generally will be deemed sufficient to support a mortgage. See 37 O.Jur.2d, *Mortgages*, § 38. Also see generally 36 Am. Jur., *Mortgages*, § 106. See also 11 O.Jur.2d *Contracts*, § 65.

There were three briefs filed in this case. Plaintiff filed a Post-Hearing Brief. The Defendant-Debtors filed a Post-Hearing Brief. Plaintiff filed a Reply To Debtors Post-Hearing Brief. Defendant Noand, as Trustee, did not choose to file a brief.

In the Plaintiff's Post-Hearing Brief it was claimed that "a mortgage is presumed valid and the burden is on the mortgagee to prove any claimed invalidity". We agree with this conclusion but point out that the case cited of *Van Doren v. Michael*, 10 Ohio L.Abs. 475 involved a chattel mortgage and the failure of the mortgagee to affix his name to the affidavit in the mortgage. The Court found the burden was on the mortgagee to establish his priority; that the mortgage was a valid claim and it was held that this judgment has attached to it a presumption of validity, presumed until the contrary appears.

■ Whether the Plaintiff in the instant case intended to foreclose, threatened to foreclose or promised not to foreclose would not affect the validity of the consideration. The Plaintiff had a legal right to foreclose. A promise to forbear to collect a debt is consideration to support a mortgage. See 37 O.Jur.2d, *Mortgages*, § 37, Footnote 20 *Bank of Muskingum v. Carpenter*, Wright 729.

Merrick did not borrow this money in order to avoid foreclosure. He borrowed it

to enable Ashlar to continue building projects. In any event, we have already commented that the Plaintiff had a legal right to foreclose. Having such right, any threat to institute civil litigation does not constitute duress in the sense that a mortgage can be held invalid and set aside where it has been given to avoid litigation which the mortgagee had a right to do. But in this connection it should be repeated that even assuming the mortgage was given to avoid foreclosure there still remained the undisputed facts that Merrick and his partner Miller wanted the money as an attempt on their part as partners in Ashlar to continue the building projects which had been started on the land owned by Ashlar.

We conclude that the money from the loan went to Merrick for his own personal use for the purposes above mentioned.

In the Post-Hearing Brief of Defendant-Debtors the question is raised about the Debtors signing the mortgage when they were arguably insolvent and that the mortgage may be deemed a void transfer in fraud of other creditors; that the granting of the mortgage to the Plaintiff gave the Plaintiff a secured position and that such transfer is void under Ohio law. Ohio Revised Code §§ 1313.56 and 1336.02 are given as the basis and authority for this argument. Based upon facts in this case we conclude the claims of the Debtors in regard to these matters are entirely without merit. We conclude that the mortgage was not a void transfer in fraud of other creditors and that the Plaintiff was not given a preferential position in regard to other creditors.

## EQUITY AND ADEQUATE PROTECTION

■ It is stipulated that there is a first mortgage lien on the premises in question in favor of Gem Savings Association in the approximate amount of $101,500.00. The testimony was undisputed that the balance due the Plaintiff is $89,557.40. This makes a total of $191,057.40. It was further stip-

ulated that the fair-market value of the premises is approximately $150,000.00. Obviously, there is no equity.

There is no basis on which a Trustee in Bankruptcy could sell the property for an amount that would benefit creditors.

The answer of the Debtors claim they are entitled to a $10,000.00 exemption pursuant to Ohio law. No further comment needs to be made in this decision in regard to these exemptions. The matter is moot as far as this Bankruptcy case is concerned. Assuming the fair-market value to be as stipulated and assuming the necessity of paying off in full the liens on the premises there would not be any balance left to pay exemptions.

In any event, the exemptions are governed by Ohio law and the Debtors can claim the exemptions in a foreclosure action that may be filed in which case the allowance of exemptions would be a matter to be determined by the Court handling the foreclosure action.

The testimony was uncontradicted that no payment had been made by the Debtors on this loan from the date the loan was granted. In an attempt to explain why no payments were made Merrick testified that he made no payments because he did not receive a payment book. If Merrick had been a man naive in regard to business matters with no experience in money matters this would have been considered not a very good reason for not making payments. But for a man engaged in business and experienced in money matters as Merrick was this reason for not making payments must be considered by this Court as but a poor excuse. The important thing to the decision in this cases is that no payments had been made.

The Court, therefor, concludes that there is no equity in the premises and that the Plaintiff is without adequate protection and is entitled to the relief sought.

Decision must be in favor of the Plaintiff granting an Order relieving it from the

automatic stay and authorizing the Plaintiff to proceed with foreclosure.

Entry of Judgement shall be set forth in a separate document as required by Rule 9021.